# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLE PUSCAVAGE, | : | |
| Individually and as | : | |
| Administratrix of the ESTATE OF | : | NO.: _____ OF 2016 |
| ANTHONY L. PUSCAVAGE, | : | |
| and ANTHONY COOK, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| VS. | : | |
| | : | |
| LUZERNE COUNTY CHILDREN | : | JURY TRIAL DEMANDED |
| AND YOUTH SERVICES and | : | |
| LUZERNE COUNTY, | : | |
| | : | |
| Defendants | : | |

## <u>COMPLAINT</u>

AND NOW, come the Plaintiffs, Nichole Puscavage, Individually and as Administratrix of the Estate of Anthony L. Puscavage, and Anthony Cook (collectively referred to as "Plaintiffs") by and through their attorneys, Comitz Law Firm, LLC, and hereby complain against the Defendants Luzerne County Children and Youth Services and Luzerne County (collectively referred to as "Defendants") as follows:

**Parties**

1.    Plaintiff Nichole Puscavage ("Nichole") is an adult individual residing at 563 Blackman Street, Wilkes-Barre, Luzerne County, Pennsylvania.

2.    Nichole is the natural mother and the Administratrix of the Estate of Anthony L. Puscavage.

3.    Anthony L. Puscavage was born on March 21, 2013 ("Young Anthony").

4.    Plaintiff Anthony Cook ("Anthony") is an adult individual residing at 563 Blackman Street, Wilkes-Barre, Luzerne County, Pennsylvania.

5.    Anthony is the natural father of Young Anthony.

6.    Defendant Luzerne County Children and Youth Services ("CYS") is a county agency or entity of Defendant Luzerne County, organized and existing under the laws of the Commonwealth of Pennsylvania and under the policies, procedures, and regulations of Defendant Luzerne County, with a principal place of business located at 111 North Pennsylvania Boulevard, Wilkes-Barre, Luzerne County, Pennsylvania.

7.    CYS is responsible for the safety, welfare, best interest and protection of children at risk from physical, emotional and sexual abuse, neglect and dependency when in CYS' legal and physical care, custody and control.

8. At all times relevant hereto, CYS was responsible for Young Anthony's placement and continued care and protection.

9. Defendant Luzerne County ("County") is a county, political subdivision, governmental entity, and body politic of the Commonwealth of Pennsylvania organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 200 North River Street, Wilkes-Barre, Luzerne County, Pennsylvania.

10. At all times relevant hereto, the various agents, servants and/or employees of the Defendants were acting under color of state law, within the course and scope of their employment, and in furtherance of and in pursuant to CYS' official policies.

**Introduction**

11. CYS' *vision* states they are committed to excellence, with a *mission* to assure that children are protected. They want the public to believe that their *highest priority* is to protect children from injury and harm.[1] Unfortunately for the Plaintiffs, and in particular Young Anthony, this "value" system served as the worst form of hypocrisy.

---

[1] http://www.luzernecounty.org/county/departments_agencies/human_services/ children_and_youth_services/about-us.

12.    The facts of this case reveal that the County, CYS, their various agents, servants and/or employees intentionally, carelessly and recklessly disregarded the rights, welfare, well-being, safety and protection of Young Anthony and his parents.

13.    The Defendants' sheer incompetence coupled with a lack and want of protection, investigation, active and ongoing oversight, supervision, promptness, policies, procedures, scrutiny, analysis, and safeguards directly lead to the death of Young Anthony, a 21 month old toddler.

14.    As an arm and agency of the County, what CYS does and the manner in which it exercises its power over parents and children throughout Luzerne County brings with it an incredible responsibility.  In particular, this power brings the duty to adhere to the Constitutional safeguards of those it is intending to serve. There must be respect, transparency and cooperation but in this case there was contempt, secrecy and obstruction.  There must be efficiency and accountability not incompetence and dereliction.

15.    The death of Young Anthony will not be in vain.  Instead, the Plaintiffs have filed the within lawsuit to exact the full measure of justice permitted by law and therefore seek to:

a.    force the Defendants to fundamentally change the way in which they operate, create new policies and safeguards for children like Young Anthony, and treat families and care for children that are in their care, custody and control in such as way so as to prevent another tragedy like the one suffered by Young Anthony and his parents;

b.    recover the maximum amount of money damages and punitive damages available by law, and

c.    recover other appropriate relief provided under 42 U.S.C.A. § 1983 for the Defendants' respective violations of the Plaintiffs' Constitutionally protected civil rights.

### Jurisdiction and Venue

16.    This Court has jurisdiction over the subject matter of this Complaint pursuant to 42 U.S.C.A. § 1983 and 28 U.S.C.A. §§ 1331, 1343 and 1367.

17.    Venue is appropriate in the Middle District of Pennsylvania pursuant to 28 U.S.C.A. §1391.

**Relevant Facts**

18.   On or about September 13, 2014, Young Anthony was removed from the care of Nichole and Anthony and placed with Anthony's relatives and family members.

19.   Young Anthony was purportedly removed from the care of Nichole and Anthony due to the heating system being shut off in Nichole and Anthony's home.

20.   It is believed and therefore averred that in or about September 2014, Young Anthony was adjudicated to be a dependent child and would be henceforth under the supervision, care and custody of CYS.

21.   Prior to placing Young Anthony with his father's relative, CYS did not carefully, adequately and appropriately assess and evaluate the safety and risks associated with this placement.

22.   Prior to placing Young Anthony with his father's relative, CYS failed to adequately and carefully assess the appropriateness of Anthony's caregivers and relatives and CYS failed to investigate and obtain any background clearances of members of the home in which CYS placed Young Anthony, which is contrary to CYS regulations and protocol.

23.   In point of fact, CYS failed to discover, note or consider that Anthony's relative was involved in a long prior history with CYS, including

incidents of child abuse, placement of the relative's children with CYS and termination of the relative's parental rights to her own children.

24.  It is believed and therefore averred that even a cursory review of internal agency records of CYS would have immediately discovered the troubling history of Anthony's relative, and therefore, the obvious inappropriateness of placement of Young Anthony with that relative.

25.  CYS allegedly implemented a family service plan ("FSP") on behalf of Young Anthony which was dated October 13, 2014, and contrary to CYS regulations, policies, procedures and protocol Nichole and Anthony were not given the opportunity to participate in the development of the FSP.

26.  In fact, Nichole and Anthony were never provided a copy of the above-referenced FSP for their review, consideration, input or opportunity to dispute or contest the contents therein.

27.  Instead CYS disregarded Nichole and Anthony's legal and parental rights and literally shut them out of the care, protection and safety that they could provide Young Anthony

28.  Notably, there have never been any allegations against Nichole and Anthony of any issues of abuse or neglect associated with Young Anthony or any other child.

29.    On November 3, 2014, CYS petitioned a Luzerne County Court for dependency and removal of Young Anthony from his father's relative's home.

30.    Young Anthony was then placed in the home of Nichole's mother.

31.    It is believed and therefore averred that CYS failed to obtain background clearances of Nichole's mother or members of that household.

32.    Nichole's mother had an extensive history of CYS involvement in her own life, as her children were removed from her when they were minors.

33.    In fact, in addition to Young Anthony, Nichole's mother also had custody in her home of Nichole's three (3) other children.

34.    On January 8, 2015, Young Anthony allegedly suffered a head injury while under Nichole's mother's care and custody causing a large abrasion on the back left side of his head.

35.    On January 10, 2015, Nichole's mother found Young Anthony unresponsive on her couch at approximately 9:15 a.m., and emergency medical personnel were contacted.

36.    Emergency medical personnel arrived at Nichole's mother's home at approximately 9:36 a.m. on January 10, 2015 and found Young Anthony to be barely breathing and unresponsive, with a blown pupil.

37. Young Anthony was transported to Geisinger Wyoming Valley Hospital and a CAT scan indicated Young Anthony was suffering from a subdural hematoma.

38. Young Anthony was taken to the operating room and the subdural hematoma was removed from the left top part of Young Anthony's brain.

39. Unfortunately, Young Anthony did not survive the surgery and was pronounced dead at 11:49 a.m.

40. An autopsy was performed, and the examination revealed multiple abrasions and contusions in various stages of healing, as well as a history of poor feeding and various other medical problems.

41. The autopsy further revealed that Young Anthony had a history of bruising and poor growth development.

42. Further, the forensic pathologist who performed the autopsy opined that the injuries sustained to Young Anthony including the chronic subdural hematoma with recurrent bleeding were due to traumatic abuse over time.

43. CYS failed to adhere to its required and mandated safety protocol, policies and procedures in placing Young Anthony, which failure proximately caused the death of Young Anthony

44. It is believed and therefore averred that CYS failed to implement an appropriate, feasible and overall structure and guidelines in its investigations,

dependency filings and placement of alleged dependent children in Luzerne County such as Young Anthony

45.    It is believed and therefore averred that CYS established a history and custom of being deliberately indifferent to training of its personnel and / or employees.

46.    It is believed and therefore averred that, in addition to Young Anthony striking his head in January 2015, Young Anthony's death was also caused by repeated bruising and injuries while in the care of others, said abuse occurring over a period of time.

47.    In point of fact, had Young Anthony stayed in the care, custody and control of his own parents, his death would never have happened.

48.    CYS actions and inactions surrounding Young Anthony triggered an investigation by the Pennsylvania Department of Public Welfare ("DPW").

49.    Additionally, a report prepared by DPW indicated that two (2) safety assessments prepared by CYS in regard to Young Anthony clearly disputed that safety was actually assessed on the dates they were prepared as the language was shockingly copied from a March 2014 Preliminary Safety Assessment.

50.    Further, the FSP dated October 13, 2014 was not signed by the CYS caseworker and CYS supervisor until after Young Anthony tragically passed away, clearly evidencing a conspiracy to cover up CYS' egregious behavior.

51.    As a result of these violations, DPW downgraded CYS' license to provisional status.

52.    CYS' conduct as stated herein was in violation of the Plaintiffs' civil rights as afforded and protected by the United States Constitution.

## VIOLATIONS OF 42 U.S.C. § 1983
### (Plaintiffs vs. Defendants)

53.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 52 as though same were set forth herein at length.

54.    The Defendants, their various agents, servants and/or employees, while acting under color of state law, unlawfully, intentionally, unreasonably, maliciously, with deliberate indifference and /or with reckless indifference to Plaintiffs' civil rights violated 42 U.S.C.A § 1983 and deprived the Plaintiffs of their rights guaranteed under the Constitution of the United States, causing the aforementioned injuries by acting as follows:

a.    Having a pattern, custom or policy that resulted in their failure to investigate the suitability and fitness of Young Anthony's foster home(s);

b.    Having a pattern, custom or policy that resulted in their failure to maintain proper and reasonable supervision and inspection of the foster home(s) where Young Anthony was placed;

c.    Having a pattern, custom or policy that resulted in the placement of Young Anthony in a foster home(s) when they knew or should have known that the foster home(s) was unfit and improper for Young Anthony's placement therein;

11

d.    Having a pattern, custom or policy that resulted in their failure to properly train and/or establish proper training procedures for their employees and agents;

e.    Having a pattern, custom or policy that resulted in their failure to exercise proper care and supervision over the foster home(s) and/or failing to establish proper monitoring and supervision policies for their employees and agents;

f.    having a pattern, custom or policy that resulted in their failure to devise and implement effective procedure, protocol, techniques, methods and means for assessing the propriety of placement such as Young Anthony in the foster home(s);

g.    Having a pattern, custom or policy that resulted in the failure to devise and implement effective procedures, protocol and techniques and methods and means for ongoing supervision of placement of Young Anthony in the foster home;

h.    Having a pattern, custom or policy that resulted in their failure to maintain and support policies and procedures to follow and or enforce federal state and local rules statutes and regulations regarding the placement of persons such as Young Anthony in foster home(s);

1.    Having a pattern, custom or policy that resulted in the failure to adequately train manage and or supervise their agents, employees, ostensible agents, apparent agents, to ensure a reasonable consistent standard of care for the health safety and welfare of Young Anthony and persons similarly situated;

J    Having a pattern, custom or policy that resulted in their failure to have policies and procedure to ensure that Young Anthony and persons similarly situated would not be injured through physical and emotional abuse;

k.    Having a pattern, custom or practice that resulted in their failure to investigate other persons in the foster home(s) that caused harm to Young Anthony through physical and emotional abuse;

12

l.    Failing to properly and adequately investigate, obtain background clearances and follow up in the placement of Young Anthony in foster care;

m.    Failing to recognize and/or remedy a dangerous and unsafe household where Young Anthony was placed;

n.    Failing to adhere to CYS Agency safety protocol and procedures;

o.    Failing to implement policies and procedures in regard to its investigation of allegedly dependent children;

p.    Failing to implement policies and procedures in regard to its dependency filings of allegedly dependent children;

q.    Failing to implement policies and procedures in regard to its placement of allegedly dependent children;

r.    Adhering to a history and custom of being deliberately indifferent to training as to parents' and children's constitutional rights.

s.    Failing to take all measures necessary under the circumstances then and there existing to protect Young Anthony from child abuse and negligent care;

t.    Failing to remove Young Anthony from foster care after being informed of medical issues regarding Young Anthony;

u.    Failing to provide Nichole and Anthony an opportunity to participate in the FSP;

v.    Failing to provide Nichole and Anthony with a copy of the FSP prepared on behalf of Young Anthony;

w.    Being and /or causing to be inadequately funded and / or staffed so as to create an unsafe environment for the children under its care, custody and control;

x.    Staffing non-qualified and incompetent personnel; and

13

y. Otherwise conspiring to cover up, minimize and ignore DPW's investigative findings.

55. The harm and damages caused to the Plaintiffs was a foreseeable and direct consequence of the actions and omissions of the Defendants as described herein.

56. The above conduct violated the substantive and procedural due process rights of Nichole and Anthony, as well as Young Anthony's substantive and procedural due process rights.

57. The Defendants' collective policies and customs or lack thereof, including but not limited to its policy of being deliberately indifferent to training its staff members, employees, agents and servants in parents' and children's constitutional rights, violated Plaintiffs' rights guaranteed under the Fourteenth Amendment to the United States Constitution.

58. As a direct and proximate result of the Defendants' aforesaid intentional acts actions and inactions, Nichole and Anthony have suffered deprivations of their and Young Anthony's constitutional rights to substantive and procedural due process.

59. CYS also conspired with its staff members, employees, agents and servants to prevent Plaintiffs from having custody of Young Anthony, as well as placing Young Anthony in a dangerous and unsafe environment.

14

60. The conduct as described herein was a deprivation, under color of state law, of rights guaranteed to Plaintiffs under the Fourteenth Amendment to the United States Constitution.

61. The Defendants, through their various agents, servants and/or employees permitted a climate of complacency by allowing policies and customs described herein to exist.

62. As a direct and proximate result of the Defendants' aforesaid intentional actions and inactions, Nichole and Anthony and Young Anthony have suffered damages for which they seek compensation.

63. As a direct and proximate result of the Defendants' aforesaid intentional actions and inactions, Young Anthony died, for which he, now through his estate, suffered damages for which the estate now seeks compensation.

64. As a direct and proximate result of the Defendants' aforesaid intentional actions and inactions, Nichole and Anthony have suffered mental anguish, anxiety, distress, stress, sleeplessness and humiliation.

65. The conduct of the Defendants memorialize a deliberate indifference to the Plaintiffs and demonstrated a reckless disregard to the safety, bodily integrity, well-being, privacy and liberty of Young Anthony and was committed in conscious disregard of the substantial and unjustifiable

risk of causing harm to Young Anthony and was so egregious as to shock the conscience entitling Plaintiffs to an award of punitive damages.

66. The actions of the Defendants, their staff members, agents, servants and/or employees as set forth above were intentional, willful, malicious, wanton, reckless, oppressive, and/or outrageous entitling Plaintiffs to an award of punitive damages.

67. The actions and conduct of the Defendants' as described herein were a substantial factor in causing the Plaintiffs' harm and damages.

68. The conduct as set forth above evidences a state-created danger perpetrated by the Defendants against the Plaintiffs.

69. The conduct as set forth above demonstrates a failure to properly train CYS workers on investigating placements, conducting background checks, performing criminal docket searches, conducting interviews, and communicating with the family law judicial system.

70. The aforementioned actions of the Defendants, under color of state law, subjected the Plaintiffs to a deprivation of rights and privileges secured to them by the Constitution and laws of the United States of America within the meaning of 42 U.S.C.A. § 1983.

WHEREFORE, the Plaintiffs, Nichole Puscavage, Individually and as Administratrix of the Estate of Anthony L. Puscavage, and Anthony Cook hereby

demand judgment in their favor and against Defendants Luzerne County Children and Youth Services and Luzerne County, in an amount in excess of the jurisdictional amount of Seventy Five Thousand Dollars ($75,000.00), together with punitive damages, attorneys' fees pursuant to 42 U.S.C.A. § 1988, interest, costs and such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

COMITZ LAW FIRM, LLC

BY:    *Jonathan S. Comitz*_____
JONATHAN S. COMITZ
PA Bar Identification No.:  90914
jcomitz@comitzlaw.com